■ YASMIN KABIR, Appellant, v COUNTY OF MONROE et al., Respondents. [892 NYS2d 714]—

Memorandum: Plaintiff commenced these two actions to recover damages for injuries she allegedly sustained when the vehicle she was driving was struck from behind by a vehicle driven by defendant John DiDomenico, a Monroe County Deputy Sheriff (hereafter, Deputy). Defendants moved for summary judgment dismissing the complaint and the amended complaint, inter alia, on the ground that as a matter of law the Deputy was not driving with reckless disregard for the safety of others pur-

suant to Vehicle and Traffic Law § 1104 (e). Plaintiff cross-moved for partial summary judgment with respect to liability, contending that the Deputy was not entitled to qualified immunity under section 1104 (e) because he was not operating a "police vehicle" within the meaning of section 1104 (c) and was not engaged in an "emergency operation" within the meaning of Vehicle and Traffic Law §§ 114-b and 1104 (a) at the time of the collision. Supreme Court erred in granting those parts of defendants' motion seeking summary judgment dismissing the complaint against defendant County of Monroe (County) and dismissing the amended complaint and in denying plaintiff's cross motion seeking partial summary judgment on the issue of liability.

The accident occurred when the Deputy received a dispatch to respond to a burglary and looked down at his mobile data terminal to ascertain the location of the burglarized premises. When he looked back up two to three seconds later, he observed that traffic was moving very slowly through the intersection that he was approaching. The Deputy immediately applied his brakes, but he was unable to avoid a rear-end collision with plaintiff's vehicle. Even assuming that the Deputy was involved in an emergency operation at the time of the collision (*see* Vehicle and Traffic Law §§ 114-b, 1104 [a]), we conclude that the "reckless disregard" standard of liability contained in section 1104 (e) is not applicable to this action because the Deputy's conduct did not fall within any of the four categories of privileged activity set forth in section 1104 (b).

Vehicle and Traffic Law § 1104 (a) provides that the driver of an authorized emergency vehicle involved in an emergency operation "may exercise the privileges set forth in this section, but subject to the conditions herein stated." The statute then goes on to list in subdivision (b) those privileges that the driver of an authorized emergency vehicle may exercise, i.e., the driver may (1) stop, stand or park regardless of the provisions of the Vehicle and Traffic Law; (2) proceed past a steady or flashing red light or stop sign after slowing down to ensure the safe operation of the vehicle; (3) exceed the maximum speed limits so long as he or she does not endanger life or property; and (4) disregard regulations concerning directions of movements or turning. Subdivision (e) of the statute, which exempts the driver of an authorized emergency vehicle from liability for ordinary negligence relating to his or her operation of that vehicle, specifically relates back to subdivision (b). Thus, subdivision (e) states that "[*t*]*he foregoing provisions* shall not relieve the driver of an authorized emergency vehicle from the duty to

drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his [or her] reckless disregard for the safety of others" (emphasis added). The "foregoing provisions" referred to in the statute are the four categories of privileged activity set forth in section 1104 (b).

Therefore, in accordance with a plain reading of Vehicle and Traffic Law § 1104, the driver of an emergency vehicle who is engaged in an emergency operation may operate his or her vehicle in violation of the provisions of the Vehicle and Traffic Law so long as his or her conduct falls within one of the four categories of privileged conduct listed in subdivision (b), with two conditions. Despite the fact that the driver is privileged from having to comply with the Vehicle and Traffic Law in the four situations set forth above, he or she (1) nevertheless must operate the vehicle with due regard for the safety of others, and (2) nevertheless is liable for any injuries or consequences caused by his or her reckless disregard for the safety of others when operating the vehicle. In effect, the statute exempts a driver whose operation of an emergency vehicle falls within the four categories of subdivision (b) from the consequences of his of her ordinary negligence, rendering him or her liable only for conduct constituting the higher standard of reckless disregard for the safety of others.

Even assuming that the Deputy in this case was involved in an emergency operation at the time of the accident, we conclude that his conduct did not fall within any of the four categories of privileged conduct set forth in subdivision (b). The Deputy was merely traveling in a normal stream of traffic, driving well within the speed limit and in the proper lane of the roadway. Thus, the liability exemption contained in subdivision (e) never became applicable.

The dissent faults our analysis of Vehicle and Traffic Law § 1104 with respect to this case on several grounds. First, the dissent concludes that plaintiff for the first time in his reply brief raised the issue whether the exemption set forth in subdivision (e) applies because the Deputy's conduct did not fall within any of the four categories of subdivision (b). Thus, the dissent concludes that the issue is not properly before us. We disagree. Following defendants' assertion of the Vehicle and Traffic Law § 1104 (e) exemption, plaintiff cross-moved for partial summary judgment contending, inter alia, that the issue before the court primarily concerned the applicability of Vehicle and Traffic Law § 1104 (e). Thus, defendants were on notice that the applicability of the exemption to the case was in issue.

A determination of that issue necessarily involves an examination of the circumstances under which the exemption applies, which in turn necessitates an analysis of the statutory scheme of Vehicle and Traffic Law § 1104. It consequently is difficult to see how the defense was "blind sided." Indeed, defendants' assertion of the exemption in itself was sufficient to require an analysis of the statutory scheme of Vehicle and Traffic Law § 1104, inasmuch as it would be impossible to determine whether the Deputy was exempt from liability for ordinary negligence without an analysis of the applicability of that exemption.

The dissent further faults our analysis on the ground that it allegedly is unsupported by a plain reading of the statute. In our view, it is the dissent's analysis that is unsupported by a plain reading of the statute. According to the dissent, the four categories of conduct set forth in subdivision (b) excuse a driver engaged in the emergency operation of an authorized emergency vehicle from being charged with a traffic violation or from being subject to civil liability based solely on those four categories of conduct. Thus, the dissent in effect interprets the exemption of subdivision (e) as standing separate and apart from the remainder of the statute. However, the statute is not drafted in that fashion. Subdivision (a) expressly requires that the various subdivisions of the statute be read in conjunction with each other. That subdivision refers to the privileges that the driver of an authorized emergency vehicle involved in an emergency operation enjoys, which privileges are "set forth in this section." Those privileges are then enumerated in subdivision (b). Subdivision (a) further provides that those privileges are "subject to the conditions herein stated." After listing in subdivision (b) the four categories of privileged conduct, the statute goes on to set forth the conditions to which subdivision (a) refers, and the exemption of subdivision (e) is only one of those conditions. Subdivision (e) specifically relates back to the "foregoing provisions" of the statute, and provides that "such provisions" do not protect the driver from the consequences of his reckless disregard for the safety of others. Thus, a plain reading of the statute is that subdivision (e) is a condition placed upon the exercise of the privileges afforded to a driver set forth in subdivision (b). The dissent's conclusion that the exemption covers any and all activity of the driver of an authorized emergency vehicle engaged in an emergency operation disregards the express language of the statute. Had the Legislature intended Vehicle and Traffic Law § 1104 to apply to all of the rules of the road without limitation to the four categories of section 1104 (b), it would have drafted the statute accordingly. Significantly,

the Legislature did so in Vehicle and Traffic Law § 1103, which exempts all persons and vehicles "while actually engaged in work on a highway" from the Vehicle and Traffic Law provisions (§ 1103 [b]), except for those provisions relating to driving while intoxicated offenses. As the Court of Appeals wrote, " '[w]e have recognized that meaning and effect should be given to every word of a statute' " (*Criscione v City of New York*, 97 NY2d 152, 157 [2001]).

The dissent further faults our interpretation of the statute as being illogical. According to the dissent, the Legislature could not have intended that a driver engaging in less culpable conduct such as that involved in this case would be subject to liability under an ordinary negligence standard while a driver engaged in more culpable conduct, such as speeding, would be excused from ordinary negligence. We do not agree with the dissent that such a statutory scheme is illogical. As the dissent recognizes, the purpose of the exemption is to afford operators of emergency vehicles the freedom to perform their duties when responding to an emergency situation, unhampered by the rules of the road (*see Saarinen v Kerr*, 84 NY2d 494, 497 [1994]). The four categories of privileged conduct that the statute in effect excuses from ordinary negligence constitute conduct that is essential to such an emergency response. If the driver of an emergency vehicle is engaged in "normal" driving, i.e., driving falling outside the four categories of Vehicle and Traffic Law § 1104 (b), there is no reason to excuse him or her from "normal" standards of negligence. Thus, the legislative scheme underlying the reason for the statute's enactment is not unreasonable, as the dissent contends.

Finally, we cannot agree with the dissent to the extent that it suggests that *Saarinen* and *Criscione* endorse the application of the reckless disregard standard any time that the driver of an authorized emergency vehicle is involved in an emergency operation. The Court of Appeals in *Saarinen* discussed and determined the appropriate standard of liability pursuant to Vehicle and Traffic Law § 1104 (e), but it did not state that the reckless disregard standard was applicable in every situation in which the driver of an authorized emergency vehicle was involved in an emergency operation. In *Saarinen*, the police officer's conduct fell squarely within one of the four categories of subdivision (b), inasmuch as the officer was driving in excess of the speed limit when the accident occurred. We find it significant that the Court of Appeals, when referring to Vehicle and Traffic Law § 1104 (e), stated that "[t]his statute establishes the standard for determining an officer's civil liability for damages

resulting from the *privileged* operation of an emergency vehicle" (84 NY2d at 500 [emphasis added]). There was no issue in *Saarinen* concerning the *applicability* of the exemption in subdivision (e) but, rather, the issue concerned the *standard* for determining liability pursuant to that exemption.

In *Criscione*, the Court addressed the issue of whether an officer who was responding to a dispatch was involved in an "emergency operation." The officer characterized the dispatch as a nonemergency call, and neither activated his siren or lights nor increased his speed. He was, however, traveling in excess of the posted speed limit. The Court determined that, despite the officer's own characterization of the dispatch, he was involved in an emergency operation within the meaning of Vehicle and Traffic Law § 1104, so that the reckless disregard standard of liability applied. Because the officer's conduct fell within one of the four categories of privileged activity of section 1104 (b) (Vehicle and Traffic Law § 1104 [b] [3]), the Court had no reason to determine the standard of liability for conduct falling outside those four categories.

In this case, as previously noted, the Deputy's conduct did not fall within any of the four categories of privileged conduct contained in subdivision (b). The Deputy did not unlawfully park or stand, proceed past a steady red light or other similar traffic control device, exceed the maximum speed limit or disregard regulations concerning directions of movement or turning (*see* Vehicle and Traffic Law § 1104 [b] [1]-[4]). Thus, the reckless disregard standard of subdivision (e) is not applicable. Instead, the applicable standard for determining liability is the standard of ordinary negligence. Defendants did not establish their entitlement to summary judgment dismissing the complaint against the County and dismissing the amended complaint as a matter of law pursuant to the ordinary negligence standard of liability. It is well settled that a rear-end collision with a vehicle in stop-and-go traffic creates a prima facie case of negligence with respect to the operator of the rear vehicle, and that partial summary judgment on liability in favor of the person whose vehicle was rear-ended is appropriate in the absence of a nonnegligent explanation for the accident (*see Emil Norsic & Son, Inc. v L.P. Transp., Inc.*, 30 AD3d 368 [2006]; *Mullen v Rigor*, 8 AD3d 104 [2004]; *see also Mustafaj v Driscoll*, 5 AD3d 138, 139 [2004]). Here, in support of their motion, defendants failed to provide a nonnegligent explanation for the rear-end collision, while plaintiff met her burden in support of her cross motion seeking partial summary judgment on the issue of liability by submitting evidence establishing as a matter

of law that the vehicle driven by her was rear-ended by the vehicle driven by the Deputy. The court therefore erred in granting those parts of defendants' motion seeking summary judgment dismissing the complaint against the County and dismissing the amended complaint and in denying plaintiff's cross motion (*see Jumandeo v Franks*, 56 AD3d 614 [2008]; *Shelton v Rivera*, 286 AD2d 587 [2001]; *Chiaia v Bostic*, 279 AD2d 495 [2001]).

Finally, we reject defendants' contention that the applicable statute of limitations for this action is CPLR 215 (1), i.e., one year. We have previously determined that the three-year statute of limitations set forth in CPLR 214 (5) applies in such actions (*see Smelts v O'Hara*, 302 AD2d 948 [2003]).

All concur except Martoche and Peradotto, JJ., who dissent and vote to affirm in the following memorandum.

Martoche and Peradotto, JJ. (dissenting). We respectfully dissent and would affirm because we do not agree with the majority's conclusion that the "reckless disregard" standard of liability is not applicable to this action (*see* Vehicle and Traffic Law § 1104 [e]).

On the afternoon of September 20, 2004, defendant John DiDomenico, a Monroe County Deputy Sheriff (hereafter, Deputy), was on routine patrol in a marked police vehicle when he received a radio dispatch to respond to a report of a stolen vehicle in Henrietta. While the Deputy was responding to that dispatch, he received a second radio dispatch requesting that a backup unit assist another deputy in responding to a burglary on Leo Road, also in Henrietta. The burglary was classified as a "priority one" call, which is the highest priority classification. The Deputy acknowledged receipt of the request for assistance and advised the police dispatcher by radio that he would respond to the request for backup for the burglary before he responded to the stolen vehicle report. A red dispatch signal then flashed on the mobile data terminal (MDT) located inside the Deputy's vehicle. The Deputy touched the MDT screen to view the job card, which displays additional information concerning a dispatch, including the address of the incident and nearby cross streets. Because the Deputy was not familiar with the location of Leo Road, he looked down at the screen for approximately two to three seconds to view the cross streets. The Deputy was traveling below the speed limit at that time. When the Deputy looked back up at the road, he noticed that the traffic in front of him had slowed down. He applied the brakes of his vehicle, but he was unable to bring the vehicle to a complete stop before rear-ending the vehicle driven by plaintiff.

On these facts, the majority concludes that the Deputy is not entitled to the heightened standard of liability afforded to drivers of authorized emergency vehicles under Vehicle and Traffic Law § 1104 (e), i.e., the reckless disregard standard, as opposed to that of ordinary negligence. We cannot agree with the majority. The Deputy was operating an "authorized emergency vehicle" within the meaning of Vehicle and Traffic Law § 101 and was engaged in an "emergency operation" within the meaning of Vehicle and Traffic Law §§ 114-b and 1104 (a) at the time of the collision. Thus, in our view, the Deputy is entitled to the benefits of Vehicle and Traffic Law § 1104, including the protection from civil liability in the absence of conduct demonstrating reckless disregard for the safety of others (§ 1104 [e]; *see Criscione v City of New York*, 97 NY2d 152, 158 [2001]).

Initially, we note that the contention upon which the majority relies in its decision—i.e., that the reckless disregard standard of liability contained in Vehicle and Traffic Law § 1104 (e) does not apply to this action because the Deputy's conduct did not fall within any of the four categories of privileged conduct set forth in section 1104 (b)—was not raised by plaintiff in Supreme Court. Indeed, that contention was raised for the first time in plaintiff's reply brief and thus is not properly before us (*see Matter of State of New York v Zimmer* [appeal No. 4], 63 AD3d 1563 [2009]; *Turner v Canale*, 15 AD3d 960 [2005], *lv denied* 5 NY3d 702 [2005]), inasmuch as neither defendants nor the motion court were afforded the opportunity to address it. In the motion court, plaintiff contended that the Deputy was not entitled to qualified immunity under Vehicle and Traffic Law § 1104 (e) for two reasons only: (1) that the Deputy's road patrol car was not a "police vehicle" within the meaning of section 1104 (c), and (2) that the Deputy was not engaged in an "emergency operation" at the time of the accident. It is beyond dispute that the purpose of the preservation rule is to enable an opposing party to respond to a particular argument and to enable the court deciding the matter in the first instance to address the argument. As the Court of Appeals recently reiterated, "[w]e are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made" (*Misicki v Caradonna*, 12 NY3d 511, 519 [2009]).

With respect to the merits, the majority assumes only for the sake of argument that the Deputy was engaged in an "emergency operation" at the time of the collision (*see* Vehicle and Traffic Law §§ 114-b, 1104 [a]). In our view, however, there is no question that the Deputy was engaged in an emergency operation at

the time of the accident. "Prevailing case law leaves no doubt that a police officer in a patrol vehicle responding to a police call or dispatch is engaged in an emergency operation within the meaning of Vehicle and Traffic Law § 114-b" (*O'Banner v County of Sullivan*, 16 AD3d 950, 952 [2005]; *see* Vehicle and Traffic Law § 114-b [defining "emergency operation" as the operation "of an authorized emergency vehicle, when such vehicle is . . . responding to" a police call]; *Criscione*, 97 NY2d at 157-158; *Hughes v Chiera*, 4 AD3d 872 [2004]). Indeed, as we wrote in *Allen v Town of Amherst* (8 AD3d 996, 997 [2004]), "all police officers in patrol vehicles responding to police calls are involved in an emergency operation within the meaning of Vehicle and Traffic Law § 114-b." At the time of the accident, the Deputy was operating a patrol vehicle and was responding to a police dispatch concerning a potential burglary in progress. He was therefore involved in an "emergency operation" within the meaning of the statute (*see id.*).

We further respectfully disagree with the conclusion of the majority that the reckless disregard standard of liability is limited to conduct falling within the "four categories of privileged activity set forth in section 1104 (b)." In our view, the majority's conclusion is unsupported by a plain reading of the statute and runs contrary to the legislative purpose of section 1104. Vehicle and Traffic Law § 1104 (a) provides that "[t]he driver of an authorized emergency vehicle, when involved in an emergency operation, may exercise the privileges set forth in this section, but subject to the conditions herein stated." Section 1104 (b) provides that the driver of an authorized emergency vehicle may engage in certain conduct that would otherwise constitute a violation of the Vehicle and Traffic Law including, inter alia, proceeding past a red light or stop sign without coming to a complete stop, exceeding the maximum speed limit, and driving the wrong way down a street. Finally, section 1104 (e) states generally that "[t]he foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

As is clear from the terms of Vehicle and Traffic Law § 1104, read as a whole, section 1104 (b) does not exempt a driver of an emergency vehicle from liability when engaged in the conduct set forth therein; rather, that subdivision gives statutory permission to engage in such conduct. As a consequence, a police officer who is speeding or drives through a red light while responding to an emergency may not be charged with a traffic violation

and is not subject to civil liability on that basis alone (*see Saarinen v Kerr*, 84 NY2d 494, 503 [1994]; *Turini v County of Suffolk*, 8 AD3d 260, 262 [2004], *lv denied* 3 NY3d 611 [2004]; *Herod v Mele*, 62 AD3d 1269, 1270 [2009]). The statute does not expressly provide, nor in our view can it be fairly implied therefrom, that engaging in conduct other than that enumerated in Vehicle and Traffic Law § 1104 (b) automatically subjects a police officer to an ordinary negligence standard. To the contrary, the exemption from liability is contained in section 1104 (e) (*see Saarinen*, 84 NY2d at 497), and it is for any conduct that does not rise to the level of recklessness (*see Criscione*, 97 NY2d at 158), regardless of whether such conduct is expressly privileged by Vehicle and Traffic Law § 1104 (b).

In our view, the construction of Vehicle and Traffic Law § 1104 endorsed by the majority undermines the legislative purpose of the statute, "i.e., affording operators of emergency vehicles the freedom to perform their duties unhampered by the normal rules of the road" (*Saarinen*, 84 NY2d at 502; *see also Ayers v O'Brien*, 13 NY3d 456 [2009]), and would thus lead to an unintended and undesirable result. As the Court of Appeals explained in *Saarinen*, "use of the undemanding ordinary negligence test . . . would lead to judicial 'second-guessing' of the many split-second decisions that are made in the field under highly pressured conditions. Further, the possibility of incurring civil liability for what amounts to a mere failure of judgment could deter emergency personnel from acting decisively and taking calculated risks in order to save life or property or to apprehend miscreants. The 'reckless disregard' test, which requires a showing of more than a momentary judgment lapse, is better suited to the legislative goal of encouraging emergency personnel to act swiftly and resolutely while at the same time protecting the public's safety to the extent practicable" (84 NY2d at 502). That reasoning applies with equal force to the facts of this case. Under the majority's construction of the statute, the conduct of the Deputy would be measured according to the reckless disregard standard of liability had he been speeding or had he collided with plaintiff's vehicle while running a red light or a stop sign. By stark contrast, however, the majority's construction of the statute renders his comparatively less culpable conduct—i.e., taking his eyes off the road for a matter of seconds to ascertain the location of the burglarized premises—subject to liability under an ordinary negligence standard. Such a construction cannot be what the Legislature intended in enacting the statute. It is axiomatic that statutes are to be "given a reasonable construction, it being presumed that a reasonable result was intended

by the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 143), and that "[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature" (§ 92 [a]).*

Significantly, New York courts—including the Court of Appeals—have not limited the application of the reckless disregard standard to cases that involve the conduct listed in Vehicle and Traffic Law § 1104 (b) and, in fact, have applied that heightened standard to cases involving facts similar to the case at bar (*see e.g. Szczerbiak v Pilat*, 90 NY2d 553, 557 [1997] [applying reckless disregard standard where police officer struck the plaintiffs' decedent while glancing down momentarily to activate his emergency lights and headlights]; *O'Banner*, 16 AD3d at 952 [deputy's actions properly measured according to reckless disregard standard where deputy, who was not speeding, collided with a vehicle after looking over his shoulder in an attempt to identify a passing vehicle]; *Hughes*, 4 AD3d 872 [2004] [applying reckless disregard standard where collision occurred while police officer looked down to replace his microphone after responding to a radio dispatch]; *see also Martin v Miller*, 255 AD2d 816, 817 [1998] [plaintiffs contended that the "reckless disregard" standard did not apply because the officer was not speeding and the use of his lights constituted an unprivileged violation of Vehicle and Traffic Law § 375 (3) and that contention was rejected by court]).

Moreover, this Court has consistently held that the only conditions that must be present in order to apply the reckless disregard standard of liability under section 1104 (e) are that the officer is operating an authorized emergency vehicle and that he or she is engaged in an emergency operation (*see e.g. Herod*, 62 AD3d at 1270; *Yerdon v County of Oswego*, 43 AD3d 1437 [2007]; *Sierk v Frazon*, 32 AD3d 1153, 1155 [2006]; *Palmer v City of Syracuse*, 13 AD3d 1229 [2004]; *Hughes*, 4 AD3d 872 [2004]). Other courts have similarly interpreted the statute (*see e.g. Gonyea v County of Saratoga*, 23 AD3d 790 [3d Dept 2005]; *Rodriguez v Incorporated Vil. of Freeport*, 21 AD3d 1024 [2d Dept 2005]). Plaintiff has not cited, nor have we found, a single case restricting the application of Vehicle and Traffic Law § 1104

---

* We note that the majority's construction of the statute will also lead to the presumably unintended result that operators of snow plows and road crew vehicles are exempt from all rules of the road and their liability limited to reckless conduct (*see* Vehicle and Traffic Law § 1103 [b]; *Riley v County of Broome*, 95 NY2d 455, 459-461 [2000]), while operators of authorized emergency vehicles who arguably serve a greater public purpose will be entitled to the protection of Vehicle and Traffic Law § 1104 (e) only in situations in which they engage in the conduct specified in section 1104 (b).

(e) to cases involving conduct that falls within the four categories of privileged activity set forth in section 1104 (b). We see no reason to depart from well-settled case law in order to carve out an exception to the applicability of the reckless disregard standard of liability under the facts of this case.

We thus conclude that, inasmuch as the accident occurred while the Deputy was operating a police vehicle and while he was engaged in an emergency operation, his conduct should be measured according to the reckless disregard standard of liability set forth in section 1104 (e), not ordinary negligence (*see* Vehicle and Traffic Law § 1104 [a], [e]; *see generally Herod*, 62 AD3d at 1270). Even in the event that it can be said that the Deputy was negligent in briefly taking his eyes off the road to ascertain the location of the burglarized premises, that " 'momentary judgment lapse' [would] not alone rise to the level of recklessness required of the driver of an emergency vehicle in order for liability to attach" (*Szczerbiak*, 90 NY2d at 557). We therefore would affirm the order. Present—Scudder, P.J., Martoche, Peradotto, Carni and Gorski, JJ.